UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY RAY SPENCER,

              Plaintiff,                                  Hon. Janet T. Neff

v.                                          Case No. 1:18-cv-643

BRENDA SIMPSON, et al.,

              Defendants.

_____/

**REPORT AND RECOMMENDATION REGARDING
DEFENDANTS' MOTION TO DISMISS (ECF No. 79); ORDER
REGARDING PLAINTIFF'S MOTION TO AMEND (ECF No. 86)**

      This matter is before the Court on Defendants' Motion to Dismiss (ECF No. 79) and

Plaintiff's Motion for Leave to File Third Amended Complaint (ECF No. 86).  Pursuant to 28

U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **GRANTED**.

However, the Court **GRANTS** Plaintiff's motion to amend.

## I. Background

      Plaintiff, a prisoner incarcerated with the Michigan Department of Corrections (MDOC),

filed his complaint in this case on June 7, 2018, while he was incarcerated at the Marquette Branch

Prison (MBP), complaining about events that occurred at Bellamy Creek Correctional Facility

(IBC) in Ionia, Michigan.  Plaintiff sued the MDOC; Brenda Simpson and Diane Suppes,

mailroom staff at IBC; and Brent Fleck, a Resident Unit Supervisor at IBC, alleging that they

violated his First Amendment right to receive mail and his Fourteenth Amendment due process

rights.  (ECF No. 1 at PageID.6-7.)  Plaintiff alleged that in June 2016 he purchased a three-year

subscription to Prison Legal News (PLN), a monthly publication of the Human Rights Defense

Center.  (*Id.* at PageID.3.)  Between March and September of 2017, Defendants Simpson and

Suppes rejected and refused to deliver six issues of PLN because they contained at least one article that violated MDOC Policy Directive 05.03.118, the primary MDOC policy governing prisoners' sending and receipt of mail.

Plaintiff claimed that he received mail rejection notices with respect to four of the six issues, which did not inform him how the rejected issues violated MDOC policy.   Plaintiff requested hearings as to those four rejections.   Defendant Fleck served as the hearing officer at each hearing.   Plaintiff was not permitted to participate in two of the four hearings.   At one of the hearings he attended, Plaintiff asked Fleck why the issues had been rejected.   Defendant Fleck replied that he did not know why they had been rejected but that, because they had been rejected by Central Office staff, he assumed there must have been something wrong with them.   Defendant Fleck also said that the only reason for the hearing was to determine how Plaintiff wished to dispose of the rejected issues.   (*Id.* at PageID.3–4.)

On January 8, 2019, the Court granted Plaintiff's motion for leave to amend his complaint to add three more Defendants, MBP mailroom employees Julie Sanford and Mary Jo Dollar and MBP Resident Unit Supervisor Fred Govern, based on events that occurred at MBP.   (ECF No. 19.)   As to this set of Defendants, Plaintiff alleged that, between March and July of 2018, Defendants Sanford and Dollar rejected two issues of PLN, claiming that at least one article contained in each issue violated Policy Directive 05.03.118.   Plaintiff alleged that he received notices of rejection for both issues, but neither notice described the rejected articles in any meaningful way or described with specificity how the content of the rejected articles advocated or promoted violence, group disruption, or insurrection.   (ECF No. 20 at PageID.101.)

Plaintiff alleged that Defendant Govern did not provide him a hearing for either mail rejection.   Instead, upon learning that Plaintiff filed a grievance regarding Govern's failure to hold

a timely hearing, Govern simply filled out an Administrative Hearing Report for both rejected issues without ever conducing an actual hearing.   (*Id.* at PageID.101–02.)   Plaintiff alleged that he was never allowed to review the rejected articles or given an opportunity to address why he believed the rejections were improper.   Plaintiff alleged that Defendants Sanford and Dollar destroyed both of Plaintiff's rejected issues of PLN prior to an administrative hearing on the rejections and without affording Plaintiff an opportunity to mail the rejected publications to an address of his choice.   (*Id.* at PageID.102.)

On December 23, 2019, the Court granted Plaintiff leave to file a second amended complaint adding a retaliation claim against Defendant Govern, adding class allegations pertaining to Plaintiff's First Amendment claim and adding Defendant Heidi Washington, the Director of the MDOC, in her official capacity for purposes of injunctive relief.   As to this request, Plaintiff cited Defendant Washington's practice of allowing each individual facility to reject issues of PLN instead of making the determination on a department-wide basis, which "often results in seemingly arbitrary and nonsensical rejections wherein an issue of [PLN] is allowed at some MDOC facilities, while the same magazines are rejected at others."   (ECF No. 72 at PageID.427.)

MDOC Policy Directive 05.03.118 provides that prisoners may send and receive uncensored mail to or from any person or organization unless the mail violates the policy or administrative rule.[1]   Mich. Dep't Corr., Policy Directive 05.03.118 ¶ D.   All incoming mail that does not receive special handling, *e.g.*, legal mail, must be opened in one location at each facility and inspected to determine whether it contains contraband.   (*Id.* ¶ GG.)   Mail cannot be prohibited "<u>solely</u> because its content is religious, philosophical, political, social, sexual,

---

[1]  The version of Policy Directive 05.03.118 effective September 14, 2009, was in effect at the time of the events alleged in this suit.   A copy of the pertinent policy is found at ECF 90-1.

unpopular, or repugnant."   (*Id.* ¶ D (emphasis in original).)   However, mail can be rejected if it is deemed to be a "threat to the security, good order, or discipline of the facility, may facilitate or encourage criminal activity, or may interfere with the rehabilitation of the prisoner."   (*Id.*) Prisoners are permitted to receive books, magazines and other publications only if :   (1) ordered by a member of the public from a preapproved internet vendor or from the publisher and sent directly to the prisoner by the vendor or publisher; (2) ordered by the prisoner from a pre-approved vendor or from the publisher and sent by the vendor or publisher directly to the prisoner; or (3) sent from an approved correspondence school in connection with an approved correspondence course.   (*Id.* ¶ CC.)

When prisoner mail is opened and "believed to be in violation of [the] policy," the mail room staff must complete and promptly send to the prisoner a Notice of Package/Mail Rejection. The Notice must identify the item believed to violate policy and explain why the item is believed to violate policy.   (*Id.* ¶ OO.)   Unless the prisoner waives his right to a hearing and the prisoner and staff agree on the appropriate disposition of the mail, a prompt hearing must be conducted to determine whether the mail violates the policy for the reasons stated in the Notice.   The person who issued the Notice may not serve as the hearing officer.   (*Id.* ¶ PP.)   At the hearing, the prisoner must be provided an opportunity to review the mail unless the review would prevent security issues.   (*Id.* ¶ QQ.)   If the hearing officer determines that there is no violation, the mail must be returned to the prisoner.   If the hearing officer upholds the determination in the Notice, the hearing officer must determine the appropriate disposition of the mail.   (*Id.* ¶ RR.)   A prisoner who disagrees with the outcome may file a grievance pursuant to the MDOC's grievance policy. (*Id.* ¶ XX.)

## II.   Motion Standard

A Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating its assertions in a light most favorable to Plaintiff to determine whether it states a valid claim for relief.[2]   *See In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2000).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true."   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).   As the Supreme Court more recently held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).   This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."   *Id.*   If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"   *Id.*   As the Court further observed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Id.* at 678-79.

When resolving a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider the complaint and any attached exhibits, public records, items appearing in the record of the case, and

---

[2]  In their motion, Defendants cite Rule 12(b)(1) as the basis for their request to dismiss Defendant Washington but do not mention it in the "Legal Standard" section of their brief.   It appears that Defendants intended to cite the rule as a basis for asserting Eleventh Amendment immunity, *see Muniz v. U.S. Border Patrol*, 741 F.3d 668, 671 (6th Cir. 2013) (sovereign immunity is an appropriate basis for dismissal for lack of subject matter jurisdiction), but they make no Eleventh Amendment argument in their brief.

exhibits attached to the defendant's motion to dismiss provided they are referenced in the complaint and central to the claims therein.[3]   *See Bassett v. Nat'l Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008).

## III.   Discussion

### A.   Motion to Dismiss

#### 1.   Withdrawn/Abandoned Claims

At the outset, the Court notes that Plaintiff has waived or withdrawn certain issues from contention and has abandoned others by failing to address them in his response.   First, Plaintiff agrees to dismiss his claims against Defendant John Doe Central Office Staff.   (ECF No. 81 at PageID.526.)   Second, Plaintiff concedes that, while his second amended complaint mentions the Religious Land Use and Institutionalized Persons (RLUIPA), he did not intend to assert a RLUIPA claim.   Thus, the Court considers any such claim voluntarily withdrawn or abandoned.   Finally, Plaintiff fails to respond to Defendants' arguments supporting dismissal of Defendant Washington. In fact, Plaintiff does not mention her name in his brief at all.   Therefore, the Court considers that claim for relief abandoned.   *See Hopkins v. Saint Lucie Cty. Sch. Bd.*, 399 F. App'x 563, 565 n.1 (11th Cir. 2010) (concluding that the plaintiff abandoned his argument that the district court should have granted him leave to amend by failing to raise the argument in response to the defendants' motion to dismiss); *Washington v. Roosen, Varchetti & Oliver, PPLC*, 894 F. Supp. 2d 1015, 1027 (W.D. Mich. 2012) ("Failing to respond to arguments properly raised in a motion to dismiss constitutes abandonment of that position."); *Bazinski v. JPMorgan Chase Bank, N.A.*, No. 13-14337, 2014 WL 1405253, at *2 (E.D. Mich. 2010) ("Claims left to stand undefended against a

---

[3] Plaintiff attaches transcripts from the Fleck and Dollar depositions to his response to Defendants' motion.   (ECF Nos. 81-2 and 81-3.)   Because the depositions constitute matters outside the pleadings they will not be considered.

motion to dismiss are deemed abandoned").   Thus, Plaintiff's claim for injunctive relief against Defendant Washington (the sole reason for her inclusion in the action) should be dismissed as abandoned.

### 2.      Retaliation Claim

Defendants argue that Plaintiff's retaliation claim against Defendant Govern is subject to dismissal because Plaintiff fails properly to allege two elements of the claim.   Plaintiff alleges that Defendant Govern retaliated against Plaintiff by:   (1) creating Administrative Hearing Reports without holding a hearing and affording Plaintiff procedural protections due under the mail policy;[4] and (2) disposing of Plaintiff's August PLN issue without holding a hearing, and later writing that the article was to be returned to Plaintiff, but the article was never returned. (ECF No. 72 at PageID.429.)

The requirements for a valid First Amendment retaliation claim are well established.   In order to state a First Amendment retaliation claim, a plaintiff must establish that:   (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct;" and (3) the adverse action was taken (at least in part) because of the protected conduct.   *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).   In addition, a plaintiff must be able to prove that the protected conduct was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

---

[4] In his retaliation claim, Plaintiff does not allege that Defendant Govern destroyed the first two articles/issues as retaliation.   In fact, he alleges that Defendants Sanford and Dollar destroyed both rejected issues.   (ECF No. 72 at PageID.72.)

Defendants concede that Plaintiff engaged in protected conduct by filing a grievance against Defendant Govern for failing to hold hearings on Plaintiff's rejected mail.   They argue, however, that Plaintiff fails to allege an adverse action and the requisite causal connection.

An action is adverse if it would deter a person of ordinary firmness from engaging in that conduct.   *See Thaddeus-X*, 175 F.3d at 394.   As noted, Plaintiff alleges that Defendant Govern engaged in adverse action by:   (1) creating Administrative Hearing Reports without holding a hearing, thus denying Plaintiff procedural protections under the mail policy; and (2) by not affording Plaintiff an administrative hearing on the rejected August 2018 PLN issue and later giving Plaintiff a second Notice of Package/Mail Rejection saying that the article was to be returned to Plaintiff but never returning it.   As for Defendant Govern's creation of Administrative Hearing Reports and failure to give Plaintiff a hearing on the first two rejections, the Court concludes that this conduct does not qualify as an adverse action.   Plaintiff filed his first grievance on July 17, 2018, complaining that Defendant Govern had not held an administrative hearing. (ECF No. 20-1 at PageID.108–10.)   According to Plaintiff, Govern's action did not change after Plaintiff filed his grievance—Govern continued not to hold a hearing, he simply created hearing reports.   Thus, the alleged "action" had already occurred.   Govern's only conduct was to create hearing reports (perhaps to remedy the problem), which act was not sufficiently adverse to deter a person of ordinary firmness from engaging in protected conduct.   *See Harbin-Bey v. Rutter*, 420 F.3d 571, 579–80 (6th Cir. 2005) (defendant's filing of "Notice of Intent to Conduct an Administrative Hearing," which did not result in a loss of privileges, did not qualify as "adverse action").   As for Defendant Govern's conduct relating to the August 2018 rejection, the Court concludes that, while it is a close question, Govern's failure to return the rejected PLN issue satisfies the adverse action requirement.   *Cf. Reed-Bey v. Lewis*, No. 13-10168, 2017 WL

8

9471683, at *6 (E.D. Mich. Aug. 28, 2017) (noting that on a prior appeal "[t]he Sixth Circuit has already found that . . . '[the defendant] subjected [the plaintiff] to an adverse action when she determined that none of his property would be returned.'") (quoting Sixth Circuit decision).

The Court concludes, however, that Plaintiff's claim fails on the causal connection requirement.   Temporal proximity is usually not sufficient by itself to establish a causal connection in a retaliation claim but in some cases "may be significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive."  *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (internal quotation marks omitted).   Nonetheless, the Sixth Circuit has been reluctant to find that temporal proximity between protected conduct and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim.   *Hill v Lappin*, 630 F.3d 468, 476 (6th Cir. 2010).   As mentioned, Plaintiff alleges that after he filed a grievance against Defendant Govern, Defendant Govern disposed of one of Plaintiff's issues of PLN without holding a hearing and later wrote that the article would be returned, but it was not returned.   Plaintiff does not state when he filed the grievance against Govern, but it appears that he relies on the July grievances as his protected conduct.[5]   As already noted, Defendant Govern was failing to hold hearings before Plaintiff filed his grievance, and there is no allegation in Plaintiff's second amended complaint plausibly suggesting that Plaintiff's grievance activity affected Defendant Govern's existing practice.   Moreover, regarding the August 2018 PLN issue, Govern, indicated that it would be returned to Plaintiff.   The fact that the PLN issue ultimately

---

[5] In his response, Plaintiff argues that he alleges that Govern failed to hold a hearing and return the August 2018 PLN issue to him in retaliation for naming Defendant Govern in the current lawsuit.   However, the timing of adding Govern to this lawsuit could not possibly support a plausible claim of retaliation.   Plaintiff added Govern to this action in January of 2019, months *after* Govern failed to hold a hearing on the rejection of the August 2018 PLN issue.   (ECF No. 20.)

9

was not returned, by itself, is insufficient to raise an inference that Defendant Govern retaliated based on a grievance or grievances that Plaintiff filed, at a minimum, several weeks earlier.

### 3.     First Amendment Claim

Plaintiff alleges that Defendants violated his First Amendment right to receive mail when they rejected his PLN issues "based solely upon their own prejudices and opinions regarding content critical of the MDOC, under the guise of non-existent security concerns, or as an exaggerated response to otherwise legitimate security concerns."  (ECF No. 72 at PageID.429.)

Defendants argue that the Court should dismiss this claim under the doctrine of qualified immunity.  "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'"  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  The analysis entails a two-step inquiry.  *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).  First, the court must "determine if the facts alleged make out a violation of a constitutional right."  *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)).  Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232).  A court may address these steps in any order.  *Id.* (citing *Pearson*, 555 U.S. at 236, 129 S. Ct. at 818).  A government official is entitled to qualified

10

immunity if either step of the analysis is not satisfied.   *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989).   The court considers the state of the law at the second step.   As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate."   *White v. Pauly*, __ U.S. __, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, __ U.S. __, 136 S. Ct. 305, 308 (2015)).   "'[C]learly established law' may not be defined at such 'a high level of generality.'"   *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 992 (6th Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).   "[A] plaintiff must identify a case with a similar fact pattern that would have given 'fair and clear warning to officers' about what the law requires."   *Id.* (quoting *White*, 137 S. Ct. at 552).   Stated differently, "[o]n both the facts and the law, specificity is [a court's] guiding light."   *Novak v. City of Parma*, 932 F.3d 421, 426 (6th Cir. 2019).

Although the Sixth Circuit has observed that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity," *Wesley v. Campbell*, 779 F.3d 421, 433–44 (6th Cir. 2015), it has also observed that when "pleadings in the case are not ambiguous" and "it is clear that no violation of a clearly established constitutional right could be found under any set of facts that could be proven consistent with the allegations or pleadings," the Court acts well within its discretion in granting a pre-answer motion to dismiss on the basis of qualified immunity.   *Jackson v. Schultz*, 429 F.3d 586, 589–90 (6th Cir. 2015); *see*

*also Human Rights Def. Ctr. v. Winn*, 431 F. Supp. 3d 925, 934–937 (E.D. Mich. 2020) (granting qualified immunity on claim by publisher of Prison Legal News that the defendants violated its First Amendment rights by rejecting issues pursuant to MDOC Policy Directive 05.03.118).

It is well established that prisoners have a First Amendment right to receive mail. *See Parrish v. Johnson*, 800 F.2d 600, 603 (6th Cir. 1986) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). This right, however, is limited by a prison's legitimate penological interests. *Sheets v. Moore*, 97 F.3d 164, 166 (6th Cir. 1996); *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992). In *Thornburgh v. Abbott*, 490 U.S. 401 (1989), the Supreme Court rejected a facial challenge to regulations, similar to Policy Directive 05.03.118, which allowed a warden to reject any publication for good reason in accordance with a non-exhaustive list of criteria to support the rejection. *Id.* at 405. In evaluating the challenge, the Court observed that because "the judiciary is ill equipped to deal with the difficult and delicate problems of prison management, this Court has afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." *Id.* at 407–08 (quotation marks omitted). Further emphasizing this deference, the Court stated:

> We deal here with incoming publications, material requested by an individual inmate but targeted to a general audience. Once in the prison, material of this kind reasonably may be expected to circulate among prisoners, with the concomitant potential for coordinated disruptive conduct. Furthermore, prisoners may observe particular material in the possession of a fellow prisoner, draw inferences about their fellow's beliefs, sexual orientation, or gang affiliations from that material, and cause disorder by acting accordingly. As the Deputy Solicitor General noted at oral argument: "The problem is not ... in the individual reading the material in most cases. The problem is in the material getting into the prison." In the volatile prison environment, it is essential that prison officials be given broad discretion to prevent such disorder.

*Id.* at 412–13 (citations omitted). Because incoming prison mail presents a substantially-greater set of prison management concerns than outgoing mail, the Court held that limits on incoming publications must be analyzed under the standard applied in *Turner v. Safley*, 482 U.S. 78 (1987),

which inquires whether the regulations are "reasonably related to legitimate penological interests." *Id.* at 409.   The *Turner* factors used to analyze such regulations are:   (1) whether there is a valid rational connection between the regulation and the legitimate governmental interest which it allegedly furthers, (2) whether there are alternative means by which the inmate may exercise the right impinged, (3) what impact accommodating the prisoner's constitutional right will have on guards, or other inmates, or the allocation of resources generally; and (4) the existence or absence of ready alternatives to the regulation in question.   *Id.* at 414–18 (citing *Turner*, 482 U.S. at 88– 91).   Applying these factors, the Court found that the regulations were reasonably related to legitimate penological interests and did not violate the First Amendment.   *Id.* at 419.

In *Human Rights Defense Center v. Winn*, 431 F. Supp. 3d 925 (E.D. Mich. 2020)— essentially a "mirror image" of the instant case—the publisher of PLN alleged that the MDOC and wardens at various MDOC facilities violated its First Amendment right to mail magazines to prisoners.   The plaintiff alleged that in numerous instances between August 2016 and July 2019, prison officials at those facilities had erroneously rejected issues of PLN on the grounds that the content of articles therein posed a threat to the security, good order, or discipline of the facility, facilitated or encouraged criminal activity, or interfered with the rehabilitation of prisoners.   In considering the defendants' motion to dismiss on the ground of qualified immunity, the court applied the *Turner* factors to Policy Directive 05.03.118 and concluded that it was reasonably related to legitimate penological interests.   As to the first factor, the court found that a reasonable prison official could conclude that a rational connection exists between the denials of the publisher's publications and security concerns at the prison.   As an example, the court observed that an article discussing a prison escape might provide information to prisoners at other facilities to use in planning an escape.   *Id.* at 936; *see also Murphy v. Karber*, No. 1:14-cv-269, 2017 WL

13

4160949, at *5, 7, 9, 13 (W.D. Mich. Sept. 20, 2017) (holding that rejection of PLN issues on the ground that they contained articles about prison escapes in other states did not violate the First Amendment because they provided information that could be useful in planning an escape, and the prisoner complaining of the rejection had previously attempted an escape).   Regarding the second factor, alternative means of exercising the right, the court stated that the MDOC's practice of allowing prison-by-prison determinations based on circumstances at the individual facility allows more prisoners to receive the publication than if an outright MDOC-wide ban were used. The court noted that requiring more uniformity would mean that "anytime one facility has concerns with an HRDC publication, prisoners at other facilities would not receive the issue." *Human Rights Def. Ctr.*, 431 F. Supp. 3d at 936.   Regarding the third factor, how fully accommodating the prisoner's First Amendment rights would affect others, the court observed that allowing prisoners to possess articles presenting security concerns could affect the safety of prison staff and other inmates.   The court noted that, while most of the publisher's publications were allowed in most MDOC facilities, some topics more than others are likely to present security concerns, and "[t]he prison warden[, not a court,] is in the best position to evaluate what topics are likely to cause security risks." *Id.*   As for the fourth factor, the existence or absence of ready alternatives, the court found that it showed that the policy was valid because the only alternative—an across-the-board ban on the magazine—would be more restrictive of prisoners' First Amendment rights.   *Id.* Finally, surveying the state of the law, which grants prison officials substantial discretion in managing prison operations, the court found that the defendants could not have known that that they were violating clearly established law by deciding at the local facility which PLN issues to reject.   *Id.* at 936–37.

Although *Human Rights Defense Center* is not binding on this Court, *see Heggie v. Mich. Dep't of Corrs.*, No. 1:07-cv-1024, 2009 WL 36612, at *4 (W.D. Mich. Jan. 5, 2009) ("This court, of course, is not bound to follow the decisions of other districts, whether within our circuit or elsewhere."), the Court finds its reasoning persuasive.   Plaintiff does not take issue with this analysis.   Plaintiff suggests instead that he is not pursuing a facial challenge to the validity of Policy Directive 05.03.118, but instead asserts an as-applied challenge based on Defendants' application of the policy to deny him receipt of PLN issues.   Plaintiff states that the rejections on the grounds that they "contain[ed] articles summarizing court's [sic] decisions mentioning names of prisoners, correctional officers, and/or not favorable to the MDOC," were unlawful.   (ECF No. 81 at PageID.537.)   The Court disagrees with Plaintiff's assessment of his second amended complaint.   Plaintiff complains that the policy allows the decision to reject issues of PLN to be made at each individual facility, which "results in seemingly arbitrary and nonsensical rejections wherein an issue of [PLN] is allowed at some MDOC facilities, while the same magazines are rejected at others."   (ECF No. 72 at PageID.427.)   Plaintiff also requests an injunction directing the MDOC to establish a "Central Review Committee" to review national publications such as PLN, wherein the Committee will determine whether to reject or allow issues of the publication across the board at every facility, "thereby eliminating the arbitrary rejection process that currently exists."   (*Id.* at PageID.431.)   Plaintiff's allegations are indicative of a facial challenge.   His second amended complaint lacks any suggestion of an as-applied challenge, and his motion to amend seeking to add an as-applied challenge against Defendants Dollar and Sanford tacitly concedes that Plaintiff has not pled such a claim.

Accordingly, the Court concludes that Plaintiff's First Amendment claim should be dismissed on the ground of qualified immunity.

### 4. Due Process Claim

Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).[6] Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, so long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his Section 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. *See Murphy*, 2017 WL 4160949, at *20 (holding that the plaintiff's due process claim based on the defendants' "deliberate, vindictive, and retaliatory withholding and destruction of [his] incoming United States First Class Mail without any prior notice" was barred by *Parratt*); *Flakes v. Brown*, No. 1:16-cv-418, 2016 WL 3536671, at *5 (W.D. Mich. June 29, 2016) (plaintiff's due process claims based upon rejection of pictures pursuant to Policy Directive 05.03.118 was barred by *Parratt*). The Sixth Circuit specifically has held that

---

[6] Plaintiff does not allege that Policy Directive 05.03.118 lacks due process protections, as the plaintiff in *Martin v. Kelley*, 803 F.2d 236 (6th Cir. 1986), argued concerning an Ohio prison regulation. In fact, as set forth above, Policy Directive 05.03.118 meets the requirements specified in *Martin*. *Id.* at 243–44.

Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claim is subject to dismissal.

### B.  Motion for Leave to Amend

Plaintiff has moved for leave to file a third amended complaint adding an "as applied" First Amendment claim against Defendants Dollar and Sanford based on testimony they gave in their depositions. Pursuant to Fed. R. Civ. P. 15(a)(2), "a court should freely give leave [to amend] when justice so requires." A court may deny leave "in cases of undue delay, undue prejudice to the opposing party, bad faith, dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or futility." *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Ordinarily, delay alone, does not justify denial of leave to amend." *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002).

Defendants argue that Plaintiff's motion should be denied because he has repeatedly failed to cure deficiencies in amendments that the Court previously allowed. But this is not true. The Court granted Plaintiff's first motion to amend to add new defendants based on similar mail rejections that occurred at MBP. The Court granted Plaintiff's second motion to amend to add the retaliation claim against Defendant Govern and class allegations regarding the First Amendment claim. Neither amendment was filed to cure pleading deficiencies. As for the instant motion, Plaintiff moved for leave to amend within a reasonable time after deposing Defendant Dollar.

Defendants further argue that the Court should deny Plaintiff's motion to amend on futility grounds. They note that an as-applied claim under the First Amendment is subject to the same

17

standard as a facial challenge.   Defendants correctly argue that Plaintiff must show that the regulation, as applied by Defendants to each rejected issue of PLN, was not reasonably related to legitimate penological objectives.   *See Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).   But this type of claim has not yet been presented to the Court.

Defendants also argue that Plaintiff's proposed claim against Defendants Dollar and Sanford must fail, as they are only the mailroom staff, who make the initial determination about whether mail might violate policy under Policy Directive 05.03.118.   Defendants note that once the initial determination is made, a hearing officer reviews the determination.   Defendants state that because Defendants Dollar and Sanford do not have "the final say about whether mail gets rejected, that alone shows the Plaintiff's theory of liability in this cause of action is flawed."   (ECF No. 90 at PageID.657.)   However, Defendants cite no authority to suggest that a prison official who initiates an allegedly unconstitutional action may not be held liable, even if the official is not the final decisionmaker.   *See Murphy*, 2017 WL 4160949, at *5 (mailroom clerks sued for issuing notices of rejection for incoming mail).   Defendants also argue that Plaintiff's claim does not rise to the level of a constitutional violation because it is based on violation of a state agency policy. However, the Sixth Circuit has recognized that "under *Turner*, plaintiffs may pursue as-applied challenges to facially valid prison regulations."   *Flagner v. Wilkinson*, 241 F.3d 475, 483 n.5 (6th Cir. 2001); *see also Thornburgh*, 490 U.S. at 419 ("remand[ing] for an examination of the validity of the regulations as applied to any of the 46 publications introduced at trial").

Finally, Defendants argue that even if Defendants Dollar and Sanford violated Plaintiff's constitutional rights, they would still be entitled to qualified immunity.   Defendants may ultimately be correct, but that determination must wait for the summary judgment stage as no factual development has occurred.   At this juncture, the Court has not even seen the rejected

18

articles to consider their substance.   *See Flagner*, 241 F.3d at 486 (in an as-applied challenge, the plaintiff must show "the lack of a factual basis for [the defendants' asserted] justifications as applied to himself").

Therefore, the Court will grant Plaintiff's motion to amend.

### IV.   Conclusion

For the foregoing reasons, the undersigned recommends that Defendants' Motion to Dismiss (ECF No. 79) be **granted** and that Plaintiff's second amended complaint be **dismissed**.

In addition, **IT IS ORDERED** that Plaintiff's Motion for Leave to File a Third Amended Complaint (ECF No. 86) is **GRANTED**.   Within **seven days** after objections to the foregoing Report and Recommendation are decided or, if no objections are filed, within **21 days** of the date of this Order, Plaintiff shall file a third amended complaint setting forth his as-applied claim against Defendants Sanford and Dollar and any other claim that may remain should an objection to the Report and Recommendation be sustained.

### **NOTICE**

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C).   Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Dated: August 17, 2020                                  /s/ Sally J. Berens
                                                        SALLY J. BERENS
                                                        U.S. Magistrate Judge